Name: Huei Dai and Matthew Muller
Street Address: 1684 Decoto Rd #274
City and County: Union City
State and Zip Code: CA 94587
Telephone Number: (415) 322-0492

**FILED**
APR 29 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

HUEI J. DAI
MATTHEW D. MULLER
MONTY MULLER

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

UNITED STATES OF AMERICA; COUNTY OF SACRAMENTO; UNITED STATES ATTORNEY'S OFFICE; ALBERT NAJERA; SCOTT JONES; (cont.) see attached

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No. 2:19CV0735 JAM DB

*(to be filled in by the Clerk's Office)*

Jury Trial:  ☒ Yes   ☐ No
*(check one)*

<u>CONTINUATION OF FULL</u>
<u>CASE CAPTION</u>

<u>Additional Defendants</u>

Matthew Segal
University of California, Davis Jail Psychiatric Services
Andrea Javist
Gregory Sokolov
Does 1-50

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: HUEI J. DAI
Street Address: 1684 Decoto Road #274
City and County: UNION CITY, ALAMEDA COUNTY
State and Zip Code: CA 94587
Telephone Number: (415) 322-0492

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

Name: United States of America
Job or Title (if known): Sovereign entity
Counsel: U.S. Attorney
Street Address: 501 I Street Suite 10-100
City and County: Sacramento, Sacramento
State and Zip Code: CA 95814
Telephone Number: (916) 554-2400

Defendant No. 2

Name: County of Sacramento
Job or Title (if known): California municipal entity
Street Address: 700 H Street
City and County: Sacramento, Sacramento
State and Zip Code: CA 95814
Telephone Number: Unknown

2

Defendant No. 3
    Name: United States Attorney's Office, Department of Justice
    Job or Title (if known): Federal executive branch agency
    Street Address: 501 I Street Suite 10-100
    City and County: Sacramento, Sacramento
    State and Zip Code: CA 95814
    Telephone Number: (916) 554-2400

Defendant No. 4
    Name: Albert Najera
    Job or Title (if known): United States Marshal
    Street Address: 501 I Street
    City and County: Sacramento, Sacramento
    State and Zip Code: CA 95814
    Telephone Number: Unknown

In official and individual capacities

## II. Basis for Jurisdiction

Federal Courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in Federal Court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same state as any plaintiff.

What is the basis for Federal Court jurisdiction? *(check all that apply)*

    ☒ Federal question          ☐ Diversity of citizenship

## ADDITIONAL PARTIES

<u>Plaintiffs</u>

2. Matthew D. Muller
   1684 Decoto Road #274
   Union City, Alameda County
   CA 94587
   (415) 322-0492

3. Monty Muller
   1684 Decoto Road #274
   Union City, Alameda County
   CA 94587
   (415) 999-2185

<u>Defendants</u>

5. Scott Jones
   Sacramento County Sheriff
   651 I St.
   Sacramento, Sacramento
   CA 95814
   (916) (Unknown)
   In official and individual capacities

## ADDITIONAL PARTIES

<u>Defendants</u>

6. University of California, Davis Jail Psychiatric Services ("JPS")
   Contract provider of mental health services
   651 I St.
   Sacramento, CA 95814

7. Andrea Javist
   Program Director for JPS
   651 I St.
   Sacramento, CA 95814

8. Gregory Sokolov
   Chief psychiatrist and/or supervisor for JPS
   651 I St.
   Sacramento, CA 95814

9.-59. Does 1 through 50 - U.S. and Sacramento County employees and contractors
   On information and belief, Doe 1 is:
9. Matthew Segal
   Assistant U.S. Attorney
   501 I Street, Suite 10-100
   Sacramento, CA 95814
   (916) 554-2400

-2B-

Fill out the paragraphs in this section that apply to this case.

A. **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

42 U.S.C. §1983; 42 U.S.C. §12101 et seq.; Bivens v. Six Unknown Agents, 403 U.S. 388 (1971); 29 U.S.C. §794b; 28 U.S.C. §§1346(b), 2671-80 First, Fifth, Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution

B. **If the Basis for Jurisdiction Is Diversity of Citizenship**

Not applicable

1. The Plaintiff(s)

    a. If the plaintiff is an individual

        The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b. If the plaintiff is a corporation

        The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual

        The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

4

*Not applicable*   b.   If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____. *Or* is incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.   The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

_____
_____
_____

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

1. This action arises from defendants' interference with the family and associational rights of the plaintiffs while plaintiff Matthew Muller was in pre-trial detention at the Sacramento County Jail from September 21, 2015 through May 9, 2017. Monty Muller is the father of Matthew Muller and Huei Dai is his spouse, and was also his fiancé for a portion of the above period before their 2017 marriage. (Please see continuation sheet.)

5

## Statement of Claim (continued)

2. The defendants in this action are government entities, officials and contractors connected to Matthew Muller's ("Matthew") pretrial detention, and to the terms and circumstances under which Monty Muller ("Muller") and Huei Dai ("Dai") could associate with him. All individuals are sued in both their individual and official capacities. Allegations are alternatively and additionally against Does 1-50.

3. Matthew entered into the care and custody of defendants United States of America ("U.S.A."), County of Sacramento ("County"), Sheriff Scott Jones ("Jones"), Albert Najera ("Najera") of the U.S. Marshals service, U.C. Davis Jail Psychiatric Services ("JPS"), JPS Program Director Andrea Javist ("Javist") and Gregory Sokolov ("Sokolov") on September 21, 2015. Beginning on that day and continuing and compounding until Matthew's discharge from the Sacramento County Main Jail ("Jail"), these defendants failed to provide basic care, and inflicted on Matthew severe isolation and deprivation of necessities.

4. Beginning on September 22, 2015, and continuing through Matthew's discharge, Muller and Dai sought to exercise their fundamental rights of association with Matthew. These efforts were by way of in-person visits, phone calls, letters and electronic messages sent via a proprietary Jail system. Various Jail policy documents stated that all of these means of association were monitored for purposes of maintaining Jail security. However, plaintiffs were advised by an attorney that

-5A-

sometimes these communications could be monitored or obtained by prosecutors, including USAO and Does 1-5 as described below.

5. Communications were in fact monitored and recorded by County and Jones and provided to U.S.A., the U.S. Attorney's Office ("USAO"), Doe 1 – an assistant U.S. Attorney believed to be Matthew Segal, and additional Does 2-5 believed to be other USAO personnel or law enforcement officers. The communications were used to aid in the prosecution of Matthew and to monitor and investigate Muller and Dai.

6. Does 1-5 acting in conjunction with defendants named in paragraph 5 interdicted mail and, on information and belief, other communications to and from Matthew. Some of these communications were withheld without notice to the sender or recipient that they had been intercepted and seized. At no time was any Plaintiff notified that their communications could be intercepted and seized without notice.

7. Plaintiffs were provided no means of communicating that was either confidential or that was monitored only for purposes of maintaining security at the Jail. Consequently, plaintiffs could not communicate freely or otherwise associate without fear it could cause harm to one of them. In particular, plaintiffs could not speak of any but the most general matters relating to Matthew's pending criminal case. Neither could they freely speak

-5B-

about subjects relating in any way to the case, such as Matthew's mental health, or about a variety of other subjects, for fear that some portion of a conversation could be presented without context against Matthew in his criminal matter.

8. As a consequence, Muller and Dai did not learn of Matthew's deteriorating mental health or other subjects relating to his welfare. In addition to feeling constrained in the subject of their conversations, Muller and Dai felt as though they were being listened to by persons adverse to their family member, and that they had to "perform" in order not to cause harm to their loved one. Candor and intimacy were impossible under the circumstances, leading not only to severely degraded association but also to consequences arising from the throttling of normal family communications and mutual care.

9. In particular, Muller and Dai were unable to apprehend the extent of Matthew's mental health impairment or its dynamics. For fear that discussions of health or the case-related topics weighing most heavily on plaintiffs' minds could harm the family, communications rarely penetrated past the superficial. All involved were forced by the unnatural limitations on family association and communications to play a role for listeners-in, rather than freely associate with their family member, in their natural personas.

10. But for these invasive limitations on their First Amendment

freedoms, Muller and Dai would have learned of Matthew's true condition and his inability to make decisions in his own best interests. Further, they would have learned details of a psychotic episode Matthew suffered relevant to his charges.

11. After Matthew pleaded guilty and he felt able to speak freely on certain topics or communicate them in writing, he wrote a letter to Muller and his mother. The letter stated that Matthew was "100% sure" he was not criminally responsible due to mental illness, and shared a few details of a psychotic episode. This letter was reviewed and withheld by USAO and Does 1-5 acting in concert with the defendants listed in paragraph 5. On information and belief, USAO and Does 1-5 intercepted the letter to prevent any intervention by Matthew's family that could lead to a plea change, or other complication in their case against Matthew. On information and belief, Does 1-5 acted because of and with awareness of the family relationship in question, targeting that relationship as a threat to their case because the care and concern inherent in that link could cause Matthew's family to investigate and act on Matthew's behalf.

12. All defendants excepting USAO and Does 1-5 had a special duty of care toward Matthew as his custodians or persons made responsible by custodians for Matthew's health and welfare. They breached this duty in multiple ways.

-5D-

13. The defendants referred to in paragraph 12 ("Custodial Defendants") failed to provide appropriate mental health care to Matthew, despite knowing him to be disabled and suffering from serious psychiatric illness. Specifically, they failed (1) to provide adequate medication properly and regularly dispensed; (2) to assess and diagnose illness and provide care and monitoring of any illness present; (3) to provide living conditions that did not further and severely degrade Matthew's health; (4) to take reasonable steps to detect and address latent symptoms causing serious suffering and impairment; and (5) to ascertain Matthew's diminished capacity and take appropriate steps to notify his family or legal representative.

14. Custodial Defendants subjected Matthew to and/or failed to protect him from severe conditions of confinement. These included (1) nearly two years of profound isolation in solitary confinement; (2) failure to provide recreation and hygiene in compliance with applicable standards; (3) failure to provide outdoor exposure, such that Matthew was allowed outside in even a secure space only 5 times in nearly two years; and (4) failure to provide facilities and basic amenities in compliance with applicable standards.

15. The denials of mental health care and severe confinement conditions interacted to render Matthew's health and circumstances still more dire. This in turn degraded and prevented full

-5E-

association with his family as compared to what would have been available absent the unlawful conditions and treatment. Upon their marriage, Dai suffered a loss of consortium with Matthew relative to what would have been possible without the unlawful conduct and lack of care. She was unable to speak to her spouse in confidence or share any form of intimacy that was not spied upon or shared to a degree exceeding defendants' interest in maintaining security at the Jail.

16. Dai's marriage to Matthew was prevented and interfered with by USA, by County, Najera, USAO and Does 1-5. For reasons unrelated to the security of the Jail and under policies exceeding the justification of jail security, Dai and Matthew were required to obtain permission to marry from USAO. This requirement delayed Matthew and Dai's ability to exercise their fundamental right to marry. USAO and Does 1-5 inappropriately provided information concerning Dai and Matthew's engagement to Matthew's former spouse, Asel Aliyasova, for use in a case against him.

17. On the day of ~~Muller~~ Matthew and Dai's marriage, Matthew was required to take his vows wearing restraints and confined in an iron cage. He was not allowed to touch or talk to his bride. Dai was not allowed to approach her groom or interact with him. Matthew and Dai were not allowed to solemnize their marriage in a manner consistent with their religious and personal beliefs, though this could easily have been achieved merely by speaking several sentences and

-5F-

allowing a brief touch.

18. All of the foregoing circumstances and violations combined and interacted to cause plaintiffs financial loss, including lost wages and legal fees resulting from adverse impacts the above acts had on Matthew's criminal case. It caused plaintiffs severe emotional suffering with ongoing effects.

19. Plaintiffs allege that the foregoing conduct, malfeasance and nonfeasance violated U.S. and California law, including but not limited to the laws listed on this form, to the Unruh and Disabled Persons Acts, and to duties set forth in common law.

IV. **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Plaintiffs request $280,000 actual damages, comprising legal costs, lost wages, health care costs, various costs incident to events involved, such as travel and lodging; other compensatory damages in an amount to be determined; punitive damages in an amount to be determined. Compensatory damages are justified because defendants' acts caused plaintiffs monetary and special loss. Punitive damages are needed to dissuade such acts in the future.

V. **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

> I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.
>
> Date of signing: April 29, 2019.
>
> Signature of Plaintiff
> Printed Name of Plaintiff   Huei J. Dai

6