HUEI J. DAI
MATTHEW D. MULLER
MONTY MULLER
1684 Decoto Rd. #274
Union City, CA 94587
(415) 322-0492
matt@projectjusticeforall.org

*Pro Se*

FILED
FEB 0 3 2020
CLERK, U.S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUEI J. DAI et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA et al, <br><br> Defendants. | No. 2:19-cv-00735-JAM-DB <br><br> **PLAINTIFFS' MEMORANDUM IN REGARD TO SCREENING UNDER 28 U.S.C. § 1915A** |

COME NOW the Plaintiffs Huei J. Dai, Matthew D. Muller and Monty Muller ("Plaintiffs") and submit the following memorandum in support of screening of their complaint under 28 U.S.C. § 1915A.

**PROCEDURAL HISTORY**

The Plaintiffs filed their Complaint in this matter on April 29, 2019, paying the filing fee and proceeding pro se. (ECF 1.) On September 26, 2019, the Court ordered Plaintiffs to show cause why their complaint should not be dismissed for failure to prosecute. (ECF 5.) On October 8, 2019, Plaintiffs responded and advised the Court that they were awaiting screening of the complaint as required by 28 U.S.C. § 1915A. (ECF 6.) Plaintiffs requested that they be allowed to file an amended complaint and supporting memorandum. On November 18, 2019, Plaintiffs mailed a motion for permission to direct-file their amended complaint due to its lengthy exhibits, and to proceed as *pro se* electronic filers. (ECF 7.) That motion is pending disposition.

On February 3, 2020, the Plaintiffs filed their First Amended Complaint with a request for leave to amended. The instant memorandum is organized around the First Amended Complaint.

## ARGUMENT

### I. THE COMPLAINT INCLUDES JOINT AND INTERDEPENDENT CLAIMS BY TWO PLAINTIFFS WHO ARE NOT SUBJECT TO § 1915 SCREENING AND ONE WHO IS; THE PRACTICAL AND LEGALLY PERMISSIBLE APPROACH IS TO SCREEN IN ALL CLAIMS

The Plaintiffs have been unable to locate controlling authority about how courts are to approach the screening of mixed prisoner/nonprisoner complaints of the instant type. This more permissive approach at the screening stage may alleviate the tension

Courts have solved a similar tension by resort to the parallel *in forma pauperis* dismissal provision of 28 U.S.C. § 1915(e). *See, e.g., Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal 2007) (avoiding a law of the case issue by finding that defendants could move to dismiss a complaint even after the court screened it in as stating a claim, because § 1915(e)(2) allowed a dismissal "at any time"). However, the Plaintiffs have paid the filing fee and § 1915(e) does not provide legal authority for dismissal.

Given the tension between the rights of nonprisoner plaintiffs and the Court's obligations under § 1915A, the Plaintiffs submit that all nonfrivolous claims should be allowed to proceed. In the U.S. judicial branch, "we follow the principle of party presentation, that is, we rely on the parties to frame the issues for decisions and assign to the courts the role of neutral arbiter...." *Greenlaw*, 554 U.S. at 243-44. The Supreme Court has found that when courts are required to affirmatively screen claims, they should deviate no further than necessary from their customary neutral role. *Jones v. Bock*, 549 U.S. at 214.

Adherence to the judicial maximum of party presentation is especially appropriate where, as here, the claims involve complex legal issues that would benefit from an adversarial presentation. *See Lewis v. Casey*, 518 U.S. 343, 399 (1996) (Souter, J., concurring in part and dissenting in part) ("we have spoken of it as essential that a case will be presented in an adversary context") (quotations omitted); *Harris v. Ford*, 32 F.Supp.2d 1109, 1111 (D. Alaska 1999) ("If the Court in effect briefs the case for or against the prisoner, it loses its mantle of impartiality."). Plaintiffs have advanced no "indisputably meritless legal theory" such that their claims are "clearly baseless" and frivolous. *Neitzke v. Williams*, 490 U.S. 319,

327-28 (1989). The Court has latitude to allow close claims to proceed for further legal explication by the parties. *See, e.g., Portman v. County of Santa Clara*, 995 F. 2d 898, 910-911 (9th Cir. 1992) (reversing summary judgment against plaintiff—although the court noted two unresolved issues likely to defeat the plaintiff's civil rights claim, the issues had not been briefed and were to be resolved in the plaintiff's favor for purposes of the appeal). All claims should be allowed to proceed.

## II. THE PLAINTIFFS' COMPLAINT IS WELL-PLEADED AND GIVES THE DEFENDANTS FAIR NOTICE OF THE CLAIMS AGAINST THEM

Although Rule 8 of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim," the Plaintiffs have alleged their theories of recovery and facts supporting them in much greater detail than is required of a well-pleaded complaint.

### A. Prisoner Complaint Screening and Applicable Pleading Standards

Upon receiving a prisoner complaint, "the court shall identify cognizable claims, or dismiss the complaint...." 28 U.S.C. § 1915A(b). The Court of Appeals has found that standards for dismissal under § 1915A and Rule 12(b)(6) are the same. *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1138 (9th Cir. 2015). However, the Court of Appeals has also instructed lower courts to exercise caution against prematurely dismissing prisoner complaints. *E.g., Byrd v. Maricopa County Board of Supervisors*, 845 F.3d 919, 922 (9th Cir. 2017) (reversing § 1915A dismissal and appointing counsel on remand). A complaint may be dismissed where there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept*, 901 F.2d 696, 699 (9th Cir. 1990). However, the dismissal standard is not to be conflated with a requirement that plaintiffs punctiliously set forth their legal theory and sort facts accordingly. *Johnson v. City of Shelby, Miss*, 574 U.S. 10, 135 S. Ct. 346, 347 (2014) ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claims for relief").

In determining whether a complaint states a claim, the court accepts as true all factual allegations, construes the pleading in the light most favorable to the plaintiff, and resolves all doubts in the plaintiff's favor. *Lazy Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). A complaint may "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under

some viable legal theory." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007). Bare conclusory allegations are not taken as true, but the court "does examine whether [they] follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted). Those supporting facts are to be considered by the court whether they appear under a particular cause of action or elsewhere in the complaint. *San Luis & Delta-Mendota Water Authority v. U.S. Dept. of Interior*, 236 F.R.D. 491 (E.D. Cal. 2006).

As permitted under Rule 8(d), the Plaintiffs have made allegations in the alternative. Plaintiffs will learn additional facts in discovery to determine which grounds of relief apply.

### B.  The Plaintiffs Are Not Required To Anticipate And Plead To Defenses That May Be Raised By Defendants

The court's role in § 1915A screening is limited to assessing whether a complaint is "sufficient to warrant ordering [the defendants] to file an answer." *Wilhelm v. Rotman*, 680 F.3d 1113, 1116 (9th Cir. 2004). As a rule, "[courts] do not, or should not, sally forth" to assert affirmative defenses not yet asserted by a party. *See Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (quotations omitted). Accordingly, the Supreme Court has held that plaintiffs are not required to plead exhaustion of administrative remedies. *Jones v. Bock*, 549 U.S. 199, 221 (2007). The same is true as to other affirmative defenses.

The California statute of limitations for personal injury claims applies in § 1983 actions, *Morales v. City of Los Angeles*, 214 F.3d 1151 (9th Cir. 2000), and in California the limitations period is a nonjurisdictional, affirmative defense. *Norgart v. Upjohn Co.*, 87 Cal.Rptr.2d 453 (Cal. 1999). The California Supreme Court has specified that the right to plead (or not plead) a limitations defense belongs solely to the defendant, and may not be asserted on a defendant's behalf by any third party. *Union Sugar Co. v. Hollister Estate Co.*, 3 Cal.2d 740 (1935). The applicable limitations period, and its potential tolling, are issues intertwined with factual allegations and even expert testimony regarding the Plaintiffs' psychiatric health and ability to discover or perceive injuries against them. *See, e.g., Quarry v. Doe I*, 139 Cal.Rptr.3d 3 (Cal. 2012) (limitations period is tolled until plaintiff discovers an injury or reasonably should have). To the extent it believes any limitations period may be in issue, the Court should await presentation of this defense by the Defendants.

///

### C. The Plaintiffs Have Averred Sufficient Facts And Information About The Defendants Sued Under §1983 To Establish Their Liability

To state a claim under § 1983, Plaintiffs must allege (1) that the defendant acted under color of state law, and (2) that the defendant's conduct deprived the plaintiffs of rights, privileges or immunities secured by the U.S. Constitution. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).

In regard to the color of law element, medical or mental health providers under contract to care for detainees act under color of state law, as the state has delegated its constitutional duty to such providers. *See West v. Atkins*, 487 U.S. 42, 54–57 (1988). Relatedly, private entities and individuals may act under color of state law when they conspire or act in concert with authorities to violate constitutional rights. *Tower v. Glover*, 467 U.S. 42, 54-57 (1988). The first amended complaint sets forth various allegations of joint action, agency and contractual relationships, and delegations of authority. These are factual issues to be determined and not conclusory averments. The Plaintiffs do not yet know the details of contracts, policies and factual circumstances that would allow them to make more precise allegations. These details are to be ascertained during discovery.

In regard to liability of municipal entities, the Plaintiffs cannot state with specificity each policy and custom of Sacramento County that caused their injuries. Neither can they reliably ascribe responsibility for the severe and systemic failures described in the complaint. Plaintiffs have accordingly made broad allegations about responsibility, policies and causation in order to cover the range of facts they will learn in discovery.

### D. The Plaintiffs Have Averred Sufficient Facts and Information About The Defendants Sued Under *Bivens* To Establish Their Liability

The Supreme Court has found that a damages remedy exists for constitutional violations by persons acting under color of federal law. *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392-97 (1971). A *Bivens* action is the federal analog to § 1983 claims and borrows most of the same analyses and defenses. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). *Bivens* actions have been allowed for Eighth Amendment claims, *Carlson v. Green*, 446 U.S. 14, 18-19 (1980), and for various other claims against custodians acting under color of federal authority. *E.g. Cleavinger v. Saxner*, 474 U.S. 193 (1985) (due process claim); *Farmer v. Brennan*, 511 U.S. 825 (1994) (failure to protect claim).

As with § 1983 claims, a private individual may act under color of federal law when conspiring or acting in concert with federal authorities to violate constitutional rights. *Tower v. Glover*, 467 U.S. 914, 920 (1984). Employees of federal contractors can act under color of federal law. *Pollard v. Geo Group, Inc.*, 629 F.3d 843, 2010 WL 2246418, *5-6 (9th Cir. 2010). In the instant action, those contractors may also be sued under § 1983, but the mere existence of an alternative remedy "does not counsel against allowing a *Bivens* cause of action." *Id.* at *10.

Plaintiffs submit that a *Bivens* remedy is particularly appropriate as to the U.S. Marshal defendant Albert Najera. Federal statutes impose on him a responsibility to ensure that any contracted detention services meet constitutional and other standards. *See* 18. U.S.C. §§ 4013(b)(2), 4086. The U.S. Marshal was well aware of the unconstitutional conditions at the Sacramento County Main Jail, had other options available for housing federal detainees, and nevertheless continued to impose unlawful conditions of confinement on his charges. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70-74 (2001). Holding the U.S. Marshal accountable goes to the heart of that deterrent purpose.

Given the possibility that some defendants may be found to act under color of state or federal law, or both, *Bivens* and § 1983 causes of actions are alleged jointly and in the alternative as to all U.S. constitutional claims.

## III. EACH OF THE PLAINTIFFS' CAUSES OF ACTION STATES A CLAIM ON THE FACTS ALLEGED

The Plaintiffs set forth below basic authority for each cause of action. Factual averments supporting each claim are present primarily in the general allegations, and also appear to some extent where each cause of action is averred. *See San Luis & Delta-Mendota Water Authority v. Dept. of Interior*, 236 F.R.D. 491 (E.D. Cal. 2006) (averments in general allegations could supply essential element of APA cause of action set forth separately).

The legal duties and personal involvement of each individual and entity sued are asserted in both the General Allegations and Parties sections of the complaint. It is in the nature of the circumstances described that the involvement of particular persons is not always clear. The extent of each named defendant's involvement is ascertainable in discovery.

## A. First Cause Of Action: Cruel and Unusual Punishment and Conditions Of Confinement

A Plaintiff establishes an Eighth Amendment violation by showing "serious deprivations of basic human needs" or of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These basic needs include "food, clothing, shelter, medical care and reasonable safety." *Helling v. Mckinney*, 509 U.S. 25, 32 (1993). Unacceptable practices also include serious deprivations of "warmth [and] exercise," *Wilson v. Seiter*, 501 U.S. 294, 304 (1991), and the unnecessary infliction of "serious psychological pain." *Jordon v. Gardner*, 986 F.2d 1521, 1530 (9th Cir. 1993) (en banc).

It is well-established that failures of medical and mental health care rising above the level of mere negligence can violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). Such violations may occur as a result of both acts and omissions, *id.* at 106, and are established by showing that a defendant acted, or failed to act, with deliberate indifference to a serious medical need. Prisoners generally must prove that a defendant actually knew of and disregarded an excessive risk to inmate health or safety, while pretrial detainees may also establish that such person objectively should have known of the risk. *See Farmer v. Brennan*, 114 S.Ct. 1970, 1977 (1994) (subjective test for prisoners); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1069-70 (9th Cir. 2016) (objective test for pretrial detainees).

The seriousness of harm suffered can be an issue of fact that hangs on expert testimony. *E.g. Hamilton v. Endell*, 981 F.2d 1063, 1066-67 (9th Cir. 1992) (discussing "dueling expert" opinions about seriousness of inner ear damage, degree of suffering it caused, and whether it was permanent). The Plaintiffs submit that especially where mental health issues are involved, the issue of the harm's severity should be deferred for the finder of fact. Expert opinion can also illustrate the physical and lasting nature of harm to the brain.

A "heightened risk of suicide" is considered a serious medical need for purposes of an Eighth Amendment analysis. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1018 (9th Cir. 2010). A policy that fails to provide for adequate mental health care can be unconstitutional on its face. *Cabrales v. County of Los Angeles*, 886 F.2d 235, 236 (9th Cir. 1989). And a responsible authority may not "just sit on [its] duff and not do anything" to remedy deficiencies causing harm. *Alexander v. Perril*, 916 F.2d 1392, 1395 (9th Cir. 1990).

### B. Second Cause Of Action: Procedural Due Process

The two-step procedural due process analysis asks first whether there exists a liberty interest which has been interfered with by the state, and second, whether the procedures attendant to that deprivation were constitutionally sufficient. *Kentucky Dept. of Corr. v. Thompson*, 430 U.S. 454, 460 (1989). Prisoners must additionally show that the deprivation complained of poses an atypical and significant hardship relative to the ordinary hardships of jail life. *See Sandin v. Conner*, 515 U.S. 472 (1995).

In most circumstances, prisoners do not have a liberty interest in such matters as classification and transfers, and prison officials are afforded broad discretion. *Moody v. Daggett,* 429 U.S. 78, 88 n.9 (1976). However, once deprivations rise to a sufficiently severe level, due process rights attach. *E.g. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (requiring due process protections in conjunction with transfer to a restrictive supermax prison). Plaintiffs submit that Mr. Muller's deprivations – including 20 months of isolation in what has been described as a "concrete sensory deprivation chamber"—rise to such a level. That matter is, in any event, best reserved for a later phase of the proceedings when the facts are further developed. *See, e.g., Walker v. Sumner*, 917 F.2d 382, 386-87 (9th Cir. 1990) (summary judgment was inappropriate where officials had failed to produce factual support justifying a restrictive policy); *Ayers v. Ryan*, 152 F.3d 77, 83 (2nd Cir. 1998) (the *Sandin* analysis is a "fact-intensive inquiry").

The Ninth Circuit has "recognized that constitutionally protected liberty interests can be created where a law sets forth substantive predicates to govern official decision making and contains explicit, mandatory language that mandates a particular outcome." *United States v. Juvenile Male*, 670 F.3d 999, 1013 (9th Cir. 2012); *see also Valdez v. Rosenbaum*, 302 F.3d 1039, 1044 n.3 (9th Cir. 2002) (confirming that the foregoing "liberty interest" analysis remains valid after *Sandin*). One such substantive predicate is supplied by federal law mandating that U.S. Marshals ensure detention conditions meet certain standards, and "comply with all applicable State and local laws and regulations." 18 U.S.C. § 4013(b)(2), 4086. The California Code of Regulations and state caselaw provide standards and procedural rights for classification decisions. Cal. Code of Regs. tit. 15, § 3378; *In re Morales*, 212 Cal.App.4th 1410 (2013); *Stoneham v. Rushen*, 203 Cal.Rptr. 20, 22-25 (Cal. App. 1984). These substantive predicates are explicitly incorporated by the federal statutes mandating that authorities ensure contract facilities comply with all state laws.

### C.   Third Cause Of Action: Americans With Disabilities Act And Rehabilitation Act

To establish a claim under Title II of the ADA, a plaintiff must allege that he or she (1) is an individual with a disability, (2) is otherwise qualified to participate in or receive the benefit of the services, programs or activities at issue, (3) was either excluded from participation in, or denied the benefits of, the defendant's services, programs or activities, or was otherwise discriminated against, and (4) that such denial or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); 42 U.S.C. § 12132.

To establish a cause of action under the Rehabilitation Act, a plaintiff must establish that he or she (1) is a "handicapped" (disabled) person under the Act, (2) is otherwise qualified to participate or receive the benefit of the relevant program, (3) the program receives federal funds, and (4) the defendant impermissibly discriminated against the plaintiff on the basis of disability. *Bonner v. Lewis*, 857 F.2d 559, 562-63 (9th Cir. 1988); 29 U.S.C. § 794.

Although technically distinct, the Plaintiffs set forth the ADA and Rehabilitation Act causes of action under a single claim as they are nearly identical. *See Pierce v. County of Orange*, 526 F.3d 1190, 1216 n.27 (9th Cir. 2008).

### D.   Fourth Cause Of Action: Freedom of Association

The Supreme Court has required that "broad rules framed to protect the public and to preserve respect for the administration of justice" must not work a significant impairment of "the value of associational freedoms." *In re Primus*, 436 U.S. 412, 426 (1978) (quotation omitted). Prisoners retain these freedoms, subject to the reasonable requirements and limitations of incarceration. *Tuner v. Safely*, 482 U.S. 78, 89-91 (1987) (regulation infringing on constitutional rights must have a "valid, rational connection" to the legitimate government interest put forward to justify it).

The Plaintiffs assert several rights under the rubric of associational freedom. These include the fundamental right to maintain family relationships, *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984), the right to marry, *Zablocki v. Redhail*, 434 U.S. 374, 383-86 (1976), the right of prisoners to correspond by mail, *Morrison v. Hall*, 261 F.3d 896, 906 (9th Cir. 2001), *Procunier v. Martinez*, 416 U.S. 397, 408-09 (1974) (as to the rights of families to correspond incarcerated loved ones), visitation, *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (noting that what constitutional protection for visitation exists is at its

strongest where immediate family is involved), and telephone communications, *Johnson v. State of California*, 207 F.3d 650, 656 (9th Cir. 2000).

As to some of these rights, individual violations standing along may be actionable. However, Plaintiffs bring these wrongs together as one claim because it is the combined effect of the violations that was so damaging. Although freedom of association is necessarily constrained for prisoners, the "right to intimate association" is not "altogether terminated by incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Courts' approval of associational restrictions is often premised on the availability to prisoners and their families of other means of exercising their rights. *See id.* at 135. So the combination of impositions here on all available means of association establishes a violation where some of the infringements standing alone might not. The combined effects formed a barrier between the Plaintiffs beyond that normally expected in prison. The Ninth Circuit has recognized a right "not to be held incommunicado," and extended that right beyond calls to a detainee's attorney. *Carlo v. City of Chino*, 105 F.3d 494, 495-500 (9th Cir. 1997). Restrictions on the Plaintiffs were of similar scope.

The Plaintiffs submit that at this stage of proceedings, the Court should look only to whether associational rights have been infringed, without anticipating the Defendants' possible justifications for the infringements. Those justifications and any valid and rational connection they have to legitimate goals are a factual matter. *See, e.g., Walker v. Sumner*, 917 F.2d 382, 386-87 (9th Cir. 1990) (prison officials could not obtain summary judgment based on conclusory assertions about policies without factual support). At least until the Defendants articulate some justification, the Plaintiffs' claims are not so indisputably meritless as to fail as a matter of law.

E.  **Fifth Cause of Action: California Unruh Act and Disabled Persons Act**

The California Unruh Act provides that all persons in the state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services "in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Act is to be liberally construed in the broadest sense reasonably possible to effect its purposes. *Wilson v. Haria and Gogri Corp.*, 479 F.Supp.2d 1127 (E.D. Cal. 2007). Correctional facilities are generally not held to be "business establishments" under the Act, *Gaston v. Colio*, 883 F.Supp. 508, 510 (S.D. Cal. 1995), but an inmate may state a claim against a private entity that contracts with a county to provide health services. *Wilkin-Jones v. County of Alameda*, 859

F.Supp.2d 1039 (N.D. Cal. 2012). In additional, plaintiffs may state a claim against "[w]hoever… aids or incites a denial" of Unruh Act rights without regard to whether the abettor is a "business establishment." *Holmes v. Bank of America*, 30 Cal.Rptr. 917 (Cal. App. 1963); Cal. Civ. Code § 52(a).

Any violation of the ADA is an automatic violation of the Unruh Act, Cal. Civ. Code § 51(f), though courts differ on whether intentional discrimination must be alleged to state an Unruh Act claim based on an ADA violation. *See Wilson*, 479 F.Supp. 2d at 1137 (finding that intentional discrimination is not required).

California's Disabled Persons Act (DPA) provides that individuals with disabilities are entitled to full and equal access to accommodations, advantages, facilities, medical facilities, common carriers and public conveyances, telephone facilities, lodging and public accommodations. Cal. Civ. Code § 54.4(a). A violation of the ADA constitutes a violation of the DPA. *Id.* at § 54.1(d). The DPA differs from the Unruh Act in that the DPA never requires intentional discrimination. *Tuszynska v. Cunningham*, 131 Cal.Rptr.3d 63 (Cal.App. 2011). The DPA has been found to apply to detention facilities. *See Wilkin-Jones*, 859 F.Supp.2d 1039; *see also Wilkin-Jones v. County of Alameda*, No. C 08-1485 MHP, Memorandum Opinion (N.D. Cal. Nov. 16, 2010) (quoting from DPA legislative history establishing intent that DPA coverage extends at least as far as the ADA's, and nothing that the ADA applies to correctional facilities).

Federal courts have held that due to the close overlap of the statutes, plaintiffs may recover damages only under one law or the other. *Hernandez v. Polanco Enterprises, Inc.*, 19 F.Supp.3d 918 (N.D. Cal. 2013). Accordingly, Plaintiffs have asserted both theories under one claim.

**F. Sixth Cause of Action: California Constitutional Right of Privacy**

Under California law, inmates retain the associational and privacy rights that are consistent with the security needs of the institution where they are held. *See, e.g., In re Carrafa*, 143 Cal.Rptr. 848 (Cal. App. 1978) (inmate's right to marry may not be impinged or delayed any more than is necessary for institutional security); *People v. Elwood*, 245 Cal.Rptr. 585 (Cal. App. 1988) (inmates retain a qualified right to privacy). Caselaw provides that interference with the right to familial association, even as to inmates, can only be justified by compelling necessity. *Haversten v. Superior Court*, 88 Cal.Rptr.2d 197 (Cal. App. 1999) (noting that "[v]isitation rights arise from the very fact of … the constitutionally

protected right to marry"); *In re Smith*, 169 Cal.Rptr. 564 (Cal. App. 1980) (interference with familial relationships for any purpose besides institutional security "is not within the purview of jail administrators").

California law recognizes a cause of action that is tied to the state constitution's express right to privacy. Its elements are (1) a legally protected privacy interest; (2) an expectation of privacy that is reasonable under the circumstances (though the privacy expected need not be absolute); and (3) conduct that amounts to a serious invasion of the protected privacy interest. *Matthews v. Harris*, 212 Cal.Rptr.3d 547 (Cal. App. 2017).

Relatedly, California recognizes a cause of action for intrusion, the elements of which are (1) on intentional intrusion into a place, conversation, or matter as to which the plaintiffs have a reasonable expectation of privacy; and (2) the intrusion would be highly offensive to a reasonable person. *In re Vizio, Inc., Consumer Privacy Litigation*, 238 F.Supp.3d 1204 (C.D. Cal. 2017). More generally, the California Constitution recognizes its citizens' interests in both (1) precluding the dissemination or misuse of sensitive and confidential information, and (2) in making intimate personal decisions or conducting personal activities without intrusion or interference. *Id.*

The state constitution's right to privacy is express, broader than its federal counterpart, and supports a right of action against both private and government entities. *San Francisco Apartment Assc. v. City and County of San Francisco*, 142 F.Supp.3d 910 (N.D. Cal. 2015). The California Constitutions right to privacy augments rather than replaces the common law tort, and can provide a cause of action even where the common law tort does not. *Porten v. University of San Francisco*, 134 Cal.Rptr. 839 (Cal. App. 1976).

Whether an expectation of privacy is reasonable is a mixed question of fact and law that considers factors such as whether the plaintiff had any possibility of opting out, consenting to or exercising her privacy interests through other means. *Gonzalez v. Uber Technologies, Inc*, 305 F.Supp.3d 1078 (N.D. Cal. 2018). Expectations of privacy are not unitary such that once pricked by any interloper, privacy is lost as to all persons. In regard to prison monitoring, courts have found that it is important that such monitoring be for institutional security. *E.g. Faunce v. Cate*, 166 Cal.Rptr.3d 61 (Cal. App. 2013); *Donaldson v. Superior Court*, 196 Cal.Rptr, 704 (Cal. 1983) (surreptitious monitoring of prisoners was

unlawful unless done for institutional security).

To the extent that the reasonableness of any privacy interest is in issue, Plaintiffs submit that the matter should be resolved upon any motion to dismiss. Finding that as a matter of law any expectation of privacy would pretermit the claims of two non-prisoners as to whom there is no authority to dismiss under 28 U.S.C. §§ 1915(e) or 1915A.

### G. Seventh Cause of Action: Negligence, Negligence *Per Se*, and Negligence Infliction of Emotional Distress

The elements of a negligence cause of action under California law are (1) the defendant had a duty to use care, (2) the defendant breached that duty, and (3) the breach was the proximate or legal cause of the resulting injury. *Hayes v. County of San Diego*, 57 Cal.4th 622, 629 (2013); *see also Sullivan v. JP Morgan Chase Bank*, 725 F.Supp.2d 1087, 1093 (E.D. Cal. 2010).

To the extent the Plaintiff Mr. Muller has successfully pleaded an Eighth Amendment deliberate indifference claim against the Custody Defendants and Care Defendants, he has also stated a claim for negligence. *See Lemire v. California Dept of Corr. & Rehab*, 726 F.3d 1062, 1081-82 (9th Cir. 2013) (nothing that the bar for a deliberate indifference is higher even than that for "gross negligence"); *see also Crabbe v. Rhoades*, 101 Cal. App. 503, 510 (1929) (defining negligence to include both "heedlessly doing an improper thing or heedlessly refraining from doing a proper thing.")

The question of legal duty is a matter of law. *Sullivan*, 725 F.Supp.2d at 1093. California law imposes a general duty to use ordinary care when conducting activities that might reasonably cause harm. Cal. Civ. Code § 1714. This can include a duty to affirmatively care for and protect a person from the conduct of others. *See Peter v. San Francisco Community College Dist.*, 205 Cal.Rptr. 842 (Cal. 1984). In determining a legal duty, courts consider the totality of moral blame, and other considerations. *Id.*

Several California statutes are relevant to the issue of legal duty in this matter. The doctrine of negligence *per se* is encoded in the California Evidence Code, section 669. Failure to exercise due care is presumed where (1) a person violated the statute or regulation of a public entity, (2) the violation proximately caused injury, (3) the injury resulted from an occurrence the statute or regulation was intended to prevent, and (4) the injured person was part of the class the law was intended to protect. *Capolungo v. Bundi*, 224 Cal.Rptr. 326 (Cal. App. 1986).

While the federal due process clause does not convert violations of state law into cognizable § 1983 claims, *Screws v. United States*, 325 U.S. 91, 108-09 (1945), such violations are relevant to legal duty and standard of care in a negligence action under the Federal Tort Claims Act. And in this case an express federal statute requires the U.S. Marshal Service to ensure that any detention contracts it enters into provide for housing and care of inmates at a level at least equal to that required by state and local law, as well as "the standards of the American Correctional Association." 18 U.S.C. § 4013(b)(2). If it enters into such a contract, the Marshals Service has no rightful option but to ensure such standards are met. *See* 18 U.S.C. § 4086.

Relevant statutes and regulations in this matter include Title 15 of the California Code of Regulations. Violations of these regulations are amply documented in the expert reports, attached to and incorporated into the complaint, which were conducted during relevant periods when Mr. Muller was at the Jail.

Physicians and other health care providers in California are expected to exercise the reasonable degree of knowledge and skill that is ordinarily possessed by members of their profession. The requirement applies to nurses, who have a duty to observe the condition of their patients and report any unfavorable changes, and to seek assistance from supervising physicians as needed. *See, e.g., Fraijo v. Hartland Hospital*, 160 Cal.Rptr. 246 (Cal. App. 1979)

Physicians can be held liable for the injurious conduct of personnel they supervise where the person injured was their patient and they are on inquiry notice of the malfeasance of their subordinates or could have prevented the harm through the exercise of ordinary care. *Thomas v. Intermedics Orthopedics, Inc.*, 55 Cal.Rptr.2d 197 (Cal. App. 1996); Cal. Civ. Code § 2338.

California recognizes a tort of negligent infliction of emotional distress, which is subsumed under the rubric of negligence. To establish liability under a "bystander" theory, a plaintiff must show (1) a close relationship with the person harmed, (2) that they were present at the time of the injury-producing events, and were aware of the injury at the time it was caused, (3) serious that they suffered serious emotional distress beyond what would be expected of a disinterested person, and (4) that distress was not an abnormal response to the circumstances. *Thing v. La Chusa*, 257 Cal.Rptr. 865 (Cal. 1989). Bystander liability has been found where the parent of an inmate witnessed his negligent treatment and his

deterioration over time from untreated illness. *Ochoa v. Superior Court*, 216 Cal.Rptr. 661 (Cal. 1985).

As set forth in their first amended complaint, the Plaintiffs have established negligence on the part of all Defendants under one or more theories, to include general negligence, negligence *per se*, professional negligence, and negligent infliction of emotional distress.

### H. Eighth Cause of Action: Breach Of Obligation To The Express Third Party Beneficiary Of Contract

In California, a cause of action for breach of contract requires (1) the existence of a contract, (2) the plaintiff's performance or valid excuse, (3) the defendant's breach of the contract, and (4) damages as a result. *Sullivan v. JP Morgan Chase Bank, NA*, 725 F.Supp.2d 1087, 1097 (E.D. Cal 2010). A third party to a contract may also sue for breach of an obligation that was owed to him under the contract. Cal. Civ. Code § 1559. In that event, the third party plaintiff need not plead performance, but must aver or establish that the contract was made for his benefit. *Id.*; *see also* Civ. Code § 1430 (a contractual obligation imposed on several persons, or a right created in favor of several persons may be joint, several, or joint and several).

The Ninth Circuit has recognized that inmates may sue as third party beneficiaries where a custodian or medical provider has failed in their contract obligations, resulting in damage to an inmate for whose case the contract was made. *See Miller v. Corrections Corporation of America*, 239 Fed. Appx. 396, 397 (9th Cir. 2007); *Hook v. State of Ariz. Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992).

The Plaintiffs do not currently possess copies of the relevant agreements and will learn of the specific terms and obligations of the contracts in discovery.

### I. Ninth Cause of Action: Loss of Consortium

California recognizes the tort of loss of consortium. *Rodriguez v. Bethlehem Steel Corp.*, 115 Cal. Rptr. 765 (Cal. 1974). The cause rises or falls on the merits of the spouse's underlying actionable claim, but the cause of action is independent and need not be brought together with the spouse's actual claim. *Id.*

The tort requires that as a direct and proximate result of a defendant's breach of mandatory duties, the plaintiff was deprived of the love, society, affection, solace, moral support and/or companionship of a spouse. *Hahn v. Mirda*, 54 Cal.Rptr.3d 557 (Cal. App. 2007). Further, the deprivation must have caused the plaintiff injury.

### J.     As To All State Law Tort Causes Of Action: California Civil Conspiracy

In California, civil "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design...." *Applied Equipment Company v. Litton Saudi Arabia, Inc.*, 28 Cal.Rptr. 2d 475 (Cal. 1994). To establish liability for civil conspiracy under California law, a plaintiff must show "(1) formation of the conspiracy (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy." *Multifamily Captive Group LLC v. Assurance Risk Managers, Inc.*, 629 F.Supp.2d 1135, 1146 (E.D. Cal. 2009) (quoting *People v. Beaumont Inv., Ltd.*, 3 Cal.Rptr.3d 429 (Cal. App. 2003)).

The Plaintiffs allege agreements among the Defendants to commit wrongful acts and omissions that caused injury to the Plaintiffs. By the nature of these agreements, acts and omissions, Plaintiffs have limited knowledge of their specific details and members. However, these facts are ascertainable in discovery and will be reflected in records, communications and in the memory of witnesses. It would be premature to dismiss these allegations before Plaintiffs have a reasonable opportunity to obtain more specific information. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (plaintiffs must allege a plausible claim to relief as to each defendant, but this standard may be met with broad allegations where it is reasonably expected that more evidence will be obtained in discovery).

### CONCLUSION

WHEREFORE the Court should screen in all of the Plaintiffs' and direct the clerk to issue summonses for all Defendants.

Respectfully submitted,

Dated: January 20, 2020         Signed: _____
                                                         Huei J. Dai

                                                Signed: _____
                                                         Matthew D. Muller

                                                Signed: /s/ Monty Muller
                                                         Monty Muller